*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF MARYLAND*
*NORTHERN DIVISION*

| | | |
|---|---|---|
| **TREVON L. ROBINSON** <br> 31600 Curtis Chapel Road <br> Westover, MD 21871 | * <br><br> * | |
| *Plaintiff,* | * | Civil Action No._____ |
| v. | * | |
| **DELMARVA AUTO GLASS, INC.** <br> 4349 Kettleford Drive <br> Salisbury, MD 21804 <br>    **Serve:** Homer F. King <br>        4349 Kettleford Drive <br>        Salisbury, MD 21804 <br>        Resident Agent | * <br><br> * <br><br> * <br><br> * | |
| *Defendant.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **COMPLAINT**

Plaintiff Trevon L. Robinson ("Mr. Robinson") through counsel makes this Complaint against his former employer, Delmarva Auto Glass, Inc. ("DAG"). Mr. Robinson asserts claims for disability discrimination, failure to accommodate and wrongful termination pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 and Md. Code Ann., State Gov't. § 20-606 ("MFEPA"). He also asserts claims for unpaid overtime wages in violation of the Fair Labor Standards Act of 1938, as amended (FLSA), 29 U.S.C. § 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. &. Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl. §§ 3-501 *et seq.* Mr. Robinson seeks declaratory and injunctive relief, compensatory damages, liquidated damages, punitive damages and an award of attorneys' fees and costs.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this action asserts violations of rights secured by the laws of the United States. The Court has supplemental jurisdiction over Mr. Robinson's state claims, which are pendant to his federal claims.

2. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b), as the events giving rise to Mr. Robinson's claims occurred in the District of Maryland, and there is no other district in which this action may be brought.

3. Prior to bringing this action, Mr. Robinson timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination. The EEOC issued a Notice of Right to Sue dated November 4, 2024, a copy of which is attached as **Exhibit A**. He files this suit within ninety (90) days of his receipt of the Notice.

## PARTIES

4. Mr. Robinson is a natural person and resident of Westover, Maryland. During the events giving rise to this suit, he was employed by DAG at its auto glass repair shop located at 2121 W Zion Rd, Salisbury, Maryland 21801.

5. DAG is a Maryland corporation with its principal place of business within the state. DAG maintains four locations across Maryland and Delaware offering glass products and services for automotive, residential, and commercial customers.

## FACTS COMMON TO ALL COUNTS

6. Mr. Robinson was employed by DAG on two separate occasions, the first of which began on or about August 6, 2020, as an upholster in the trim shop.

7. While employed at DAG, Mr. Robinson was told by the owner of DAG, Homer King, that the biggest rule of the job was never to discuss his pay with any co-workers. Mr. King also stressed to Mr. Robinson on several occasions that "there will be no overtime paid so deal with it."

8. In August of 2021, Mr. Robinson left DAG due to low wages and few opportunities for advancement. During this time when Mr. Robinson was not employed by DAG, he operated his own upholstery business.

9. On or about August 18, 2022, Mr. Robinson returned to DAG, classified as an independent contractor, and was paid through Form 1099-NEC.

10. Even though Mr. Robinson was classified as an independent contractor, he worked full-time hours under the direct supervision of DAG. Mr. Robinson frequently worked more than forty (40) hours per week and was not paid overtime. Mr. Robinson consistently worked through his lunches, and he was required to clock in and out at specific times each day. As a result, Mr. Robinson was not paid for the additional work he did each day before or after his specific clock in or out times.

11. After apparently conceding that Mr. Robinson was misclassified as an independent contractor, DAG reclassified him as a full-time employee on January 1, 2023. When Mr. Robinson transitioned from a misclassified independent contractor to an employee, DAG reduced his pay by $3.50 per hour, effective immediately.

12. On or about May 13, 2023, Mr. Robinson suffered an accidental personal injury during the course of his employment while moving heavy objects from a vehicle DAG was performing services for. Mr. Robinson experienced intense pain in his neck and shoulder which left him unable to move his neck and resulted in an emergency room visit.

13. While in the hospital, Mr. Robinson's doctors recommended that he return to work on light duty and refrain from lifting heavy objects.

14. Mr. Robinson promptly notified Mr. King of his workplace injury and his doctor's recommendation that he be placed on light duty. Instead of granting Mr. Robinson's reasonable accommodation request, Mr. King constantly berated Mr. Robinson and made degrading comments such as calling Mr. Robinson a "sissy and pussy."

15. In addition to denying Mr. Robinson's request for reasonable accommodation, Mr. King continued to pressure him to surpass his light duty restrictions and violate his doctor's recommendations.

16. On or about August 30, 2023, Mr. Robinson once again suffered an accidental personal injury during the course of his employment. This second injury was so severe that Mr. Robinson fell to the ground, could not get up, and had to call his wife to pick him up and take him for medical treatment.

17. Since Mr. Robinson's injury occurred at work and in the course of his employment, the medical treatment facility suggested that DAG file a workers' compensation claim. When Mr. Robinson called Mr. King to request company information so DAG could be billed for a workers' compensation claim, Mr. King refused to give any workers' compensation or company information to Mr. Robinson or the medical treatment facility.

18. Without the necessary information, the medical treatment facility denied care to Mr. Robinson and sent him to a local urgent care facility. The urgent care facility treated Mr. Robinson's serious injuries and told him not to return to work until he was evaluated by his primary care physician.

19. The following day, on or about August 31, 2023, Mr. Robinson was evaluated by his primary care physician and was referred to an orthopedic specialist to evaluate his severe neck and shoulder injuries.

20. On or about September 5, 2023, Mr. Robinson's orthopedic specialist permitted him to return to work on light duty restrictions including refraining from lifting any objects above twenty (20) pounds.

21. At some point following Mr. Robinson's inquiry about workers' compensation, Mr. King began posting workers' compensation notices inside the employee lounge. Mr. King did not post any such information prior to Mr. Robinson's injury.

22. Once Mr. Robinson returned to work on light duty, Mr. King's harassment became a constant part of the workday. Mr. King would frequently comment that "light duty does not exist" even though DAG's floor manager, Mr. Robinson's direct supervisor, was on light duty during the same period and had been for almost a year. Additionally, Mr. King would threaten to fire Mr. Robinson stating, "if Trevon does not toughen up, he will not have a job."

23. Mr. King's constant and severe harassment altered the conditions of Mr. Robinson's employment and created an abusive and hostile work environment.

24. In November 2023, Mr. Robinson's boss left him in charge of the shop for the day. When Mr. King found this out, Mr. King became irate and cursed at Mr. Robinson. Mr. King told him to "get your shit and get the fuck out of my shop." Confused by Mr. King's sudden outburst, Mr. Robinson asked if he was being fired. In response to Mr. Robinson's justifiable confusion, Mr. King stormed towards Mr. Robinson and threatened to throw his tools and other personal belongings off the property. Mr. King further stated that his connections should make Mr. Robinson worried about finding future employment.

25. As a direct and proximate result of his wrongful termination, Mr. Robinson has lost wages and incurred other economic losses. Moreover, he has suffered severe emotional distress accompanied by physical symptoms.

26. DAG's wrongful actions against Mr. Robinson were taken in reckless disregard of his Federally protected rights.

## CAUSES OF ACTION

### COUNT I:
### DISABILITY DISCRIMINATION/HARASSMENT AND WRONGFUL TERMINATION
### 42 U.S.C. § 12101 (ADA) & Md. Code Ann., State Gov't, § 20-602 (MFEPA)

27. The facts alleged above are incorporated by reference herein.

28. DAG acting through Mr. King subjected Mr. Robinson to persistent and severe harassment based on his disability which altered the conditions of his employment and created an abusive and hostile work environment.

29. DAG fired Mr. Robinson because he was disabled, even though he met his employer's legitimate workplace expectations and required minimal accommodation.

30. Mr. Robinson's discriminatory termination proximately caused the harm, losses and damages he has alleged.

### COUNT II
### FAILURE TO ACCOMMODATE
### 42 U.S.C. § 12101 (ADA) & Md. Code Ann., State Gov't, § 20-602 (MFEPA)

31. The facts alleged above are incorporated by reference herein.

32. Following Mr. Robinson's multiple personal injuries during the course of his employment, DAG knew that Mr. Robinson required reasonable accommodations that were granted to other employees.

33. However, DAG withheld accommodation, continued to push Mr. Robinson above the guidance of his doctors, and exploited Mr. Robinson's reduced workload as pretext for firing him.

34. DAG's failure to accommodate Mr. Robinson proximately caused the harm, losses and damages he has alleged.

## COUNT III
## UNPAID OVERTIME WAGES
### 29 U.S.C. § 201, *et seq.* (FLSA)

35. The facts alleged above are incorporated by reference herein.

36. DAG is subject to the obligations and requirements of the Fair Labor Standards Act of 1938, as amended (FLSA).

37. DAG fraudulently misclassified Mr. Robinson as an independent contractor to evade the obligations and requirements of the FLSA.

38. DAG unlawfully failed or refused to compensate Mr. Robinson in full and on time for his overtime work as required by the FLSA.

## COUNT IV
## UNPAID OVERTIME WAGES
### Md. Code Ann., Lab. &. Empl. §§ 3-401 *et seq.* (MWHL)

39. The facts alleged above are incorporated by reference herein.

40. DAG is subject to the obligations and requirements of the Maryland Wage and Hour Law (MWHL).

41. DAG fraudulently misclassified Mr. Robinson as an independent contractor to evade the obligations and requirements of the MWHL.

42. DAG unlawfully failed or refused to compensate Mr. Robinson in full and on time for his overtime work as required by the MWHL.

## COUNT V
## UNPAID OVERTIME WAGES
### Md. Code Ann., Lab & Empl. §§ 3-501 *et seq.* (MWPCL)

43. The facts alleged above are incorporated by reference herein.

44. DAG is subject to the obligations and requirements of the Maryland Wage Payment and Collection Law (MWPL)

45. Under the MWPCL, DAG was required to pay Mr. Robinson, on regular paydays of at least once every two weeks or twice a month, all his earned wages. "Wage" means all compensation that is due to an employee" and includes overtime wages.

46. DAG failed or refused to pay Mr. Robinson all wages due, including overtime wages, on his regular paydays in violation of the MWPCL.

47. DAG's unlawful failure to pay or refusal to pay Mr. Robinson all of his earned wages, including overtime, at least once every two weeks or twice a month was willful, deliberate, not in good faith and/or in reckless disregard of Mr. Robinson's rights to be paid fully and timely for work performed and was not the result of a bona fide dispute.

## PRAYERS FOR RELIEF

WHEREUPON Mr. Robinson prays this Honorable Court grant the following relief:

A. Enter a declaratory judgment DAG violated Mr. Robinson's rights under the laws of the United States;

B. Enter a judgment in favor of Mr. Robinson and against DAG for compensatory damages;

C. Enter a judgment in favor of Mr. Robinson and against DAG for punitive damages;

D. Enter a judgment in favor of Mr. Robinson and against DAG for three times his economic losses;

E. Assess reasonable attorneys' fees and costs of suit in favor of Mr. Robinson and against DAG; and

F. Grant Mr. Robinson such other and further relief as the nature of his cause may warrant.

Respectfully Submitted,

_____
ROBIN R. COCKEY, Federal Bar No.02657
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax: 410-546-1811
rrcesq@cbmlawfirm.com
*Attorney for Plaintiff*