IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TREVON L. ROBINSON,               *

        Plaintiff,                *

v.                                *       Civil Action No. GLR-25-265

DELMARVA AUTO GLASS, INC.,        *

        Defendant.                *

                              ***

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Delmarva Auto Glass, Inc.'s

("Delmarva" or "Delmarva Auto Glass") Motion for Summary Judgment (ECF No. 30).[1]

The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6

(D.Md. 2025). For the reasons set forth below, the Court will grant the Motion in part and

deny it in part.

---

[1] Also pending before the Court is Delmarva's Motion to Seal Certain Exhibits Attached to Defendant's Motion for Summary Judgment (ECF No. 35) and Plaintiff Trevon Robinson's Motion to Seal (ECF No. 39) related to exhibits attached to his Opposition to Delmarva's Motion for Summary Judgment. The Court has reviewed the sealed documents and agree that they contain sufficiently private medical and other personally identifying information that warrant sealing. See Langley v. Dir., No. 2:09CV436, 2010 WL 2483876, at *2 (E.D.Va. May 28, 2010) ("Because the documents contain personal and sensitive information regarding [Plaintiff's] mental health and medical treatment, the Court finds it appropriate to seal the records."), report and recommendation adopted, No. 2:09CV436, 2010 WL 2483881 (E.D.Va. June 16, 2010). As a result, the Court will grant the Motions to Seal (ECF Nos. 35, 39).

## I.    BACKGROUND

### A.    Factual Background

In August 2020, Plaintiff Trevon Robinson began working at Delmarva Auto Glass as an Upholster in the trim shop. (Am. Compl. ¶ 6, ECF No. 20). Robinson resigned from Delmarva in August 2021 to start his own business but later returned to Delmarva as an independent contractor on August 18, 2022. (Id. ¶¶ 8–10). Robinson alleges that the owner of Delmarva Auto Glass, Homer King, repeatedly told Robinson to never discuss his pay with any co-workers. (Id. ¶ 7; Robinson Dep. 34:14–19, ECF No. 38).

On May 13, 2023, Robinson suffered from an accidental personal injury while at work. (Robinson Dep. 61:3–62:12). Robinson experienced intense pain in his neck and shoulder while he was moving heavy objects at work and had to go to the emergency room because of this pain. (Id.). A medical provider recommended that Robinson return to work on light duty and refrain from lifting heavy objects. (Id. 66:14–18). Robinson asserts that King gave him a hard time about being on light duty, including calling him "sissy" and other names, and failed to reasonably accommodate his light duty status. (Id. 68:2–13).

On August 30, 2023, Robinson again suffered an accidental injury during his employment, which led him to see a chiropractor. (Id. 79:7–17). Robinson initially went to an urgent care facility that placed him on certain work-related restrictions, including avoiding kneeling, squatting, bending over, twisting, jumping, running, and climbing ladders. (Aug. 30, 2023 Dr.'s Note at 1, ECF No. 30-4). On September 5, 2023, Robinson's orthopedic specialist permitted Robinson to return to work on temporary light duty restrictions and recommended that Robinson follow up in six to eight weeks. (Sep. 5, 2023

Med. Rep. Form at 6–7, ECF No. 31). Robinson testifies that he tried to give this Medical Report Form to King, (Robinson Dep. 90:5–16), while King insists that Robinson never presented him with this Form, (King Dep. 35:12–21, ECF No. 37-5). Finally, in November, 2023, King fired Robinson (Robinson Dep. 83:1–84:6).

**B.      Procedural History**

On January 29, 2025, Robinson filed a Complaint (ECF No. 1) against Delmarva filed an Amended Complaint on May 28, 2025, (ECF No. 20). The six-count Amended Complaint alleges discrimination based on a disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, and in violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't. Code § 20-602 (Count I); failure to accommodate in violation of the ADA and MFEPA (Count II); unpaid overtime wages in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. §§ 201 et seq. (Count III); unpaid overtime wages in violation of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3–401 et seq. (Count IV); unpaid overtime wages in violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3–401 et seq. (Count V); and a willful violation of the Maryland Equal Pay for Equal Work Act ("MEPA"), Md. Code Ann., Lab. & Empl. §§ 3–301, et seq. (Count VI). (Am. Compl. ¶¶ 27–52). On December 29, 2025, Delmarva filed a Motion for Summary Judgment. (ECF No. 30). Robinson filed an Opposition on December 18, 2025. (ECF No. 37). On January 16, 2026, Delmarva filed a Reply. (ECF No. 43).

3

## II.    DISCUSSION

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48.

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven–Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven–Lewis, 249 F.3d at 265.

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (quoting Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)).

**B.    Analysis**

### 1.    Unpaid Overtime Wages

The Court will first address Delmarva's Motion for Summary Judgment as to Robinson's unpaid overtime wage claims. (Def.'s Mem. L. Supp. Mot. Summ. J. ["Mot."] at 25–30, ECF No. 30-1).[2] Robinson does not oppose Delmarva's Motion for Summary Judgment for unpaid wages under Counts III, IV, and V. (Pl.'s Mem. L. Opp'n Def.'s Mot. Dismiss ["Opp'n"] at 1 n.1, ECF No. 37-1). Even if unopposed, however, Delmarva must show that it is entitled to summary judgment as a matter of law. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) ("[T]he court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what

---

[2] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

it has before it whether the moving party is entitled to summary judgment as a matter of law.").

Here, Delmarva is entitled to summary judgment on Robinson's unpaid overtime wage claims under the FLSA, MWHL, and MWPCL, respectively, because the undisputed record shows that Robinson was an independent contractor when he returned to Delmarva in 2022, (Robinson Dep. 49:9–14), and the FLSA, MWHL, and MWPCL apply only to employees, see Jurado v. Bottoms Up Gentlemen's Club LLC, No. SAG-24-2096, 2025 WL 2207760, at *2 (D.Md. Aug. 4, 2025) ("To establish liability under the FLSA, MWHL, or MWPCL, Plaintiff must show that she was an 'employee' of the Defendants, not an independent contractor."). As a result, the Court will grant summary judgment to Delmarva as it relates to Counts III, IV, and V.

### 2.    Disability Discrimination[3]

The Court will next address Delmarva's Motion for Summary Judgment as to Robinson's disability discrimination claims. (Mot. at 16–23). For the reasons set forth below, the Court will deny Delmarva's Motion with respect to Robinson's disability discrimination claim because there are genuine disputes of material fact concerning, but

---

[3] Robinson frames his disability and failure-to-accommodate claims under both the ADA and the MFEPA as overlapping theories of liability, (see Am. Compl. ¶¶ 27–34), so the Court will apply caselaw under the ADA in construing Robinson's state law claims, Graham v. Volvo Grp. N. Am. Moha, No. BAH-24-1514, 2026 WL 788958, at *8 (D.Md. Mar. 20, 2026) ("Because the MFEPA is 'modeled on federal anti-discrimination legislation,' Maryland courts largely apply federal precedent to employment discrimination claims brought under the MFEPA." (quoting Watrous v. AIRtec, Inc., No. TJS-24-2076, 2025 WL 2494324, at *10 (D.Md. Aug. 28, 2025))).

not limited to, whether Robinson was a qualified individual with a disability at the time he was discharged and whether he was discharged under circumstances raising a reasonable inference of discrimination.

To establish a prima facie case for disability discrimination, Robinson must show that: (1) "[]he was a qualified individual with a disability; (2) []he was discharged; (3) []he was fulfilling h[is] employer's legitimate expectations at the time of discharge; and (4) the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination." Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004) (quoting Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001)). A person is disabled within the meaning of the ADA if he has "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1).

Here, the parties dispute whether Robinson was disabled within the meaning of the ADA at the time of his discharge. (Mot. at 17; Opp'n at 10–12). Delmarva contends that Robinson submitted a "September 5, 2023 orthopedic note placing him on temporary light-duty status pending a follow-up appointment in six to eight weeks" but that "[t]he record is devoid of any follow-up appointment documentation or light duty notes extending his temporary restrictions beyond early September, and his termination occurred well outside the six-to-eight week window identified in the September 5 note." (Mot. at 17).

The Court finds that genuine disputes of fact exist regarding, but not limited to, whether Robinson had a disability at the time of his termination in November 2023. Delmarva rests on a September 5, 2023 Medical Report Form in which a medical provider

placed Robinson on only "temporary" light-duty as proof that Robinson was not disabled at the time of his termination in November of 2023. (Sep. 5, 2023 Medical Rep. Form at 7; Mot. at 17). A closer look at the Medical Report Form, however, shows that how long the restrictions were meant to be in effect is ambiguous at best. That is, in the Form, the provider diagnoses Robinson with certain medical conditions, prescribes physical therapy, and advises that Robinson is to follow up in six to eight weeks. (Sep. 5, 2023 Medical Rep. Form at 5–6). The provider checked off the "Temporary until follow-up appointment" box as it relates to work restrictions. (Id. at 7). In Delmarva's view, this September 5, 2023 Medical Form Report that advises Robinson to follow up in six to eight weeks, coupled with Robinson's failure to seek follow-up care, establishes that Robinson was not disabled at the time of his termination in November 2023. (Mot. at 17).

The Court disagrees. Robinson raises a genuine dispute of fact on this issue because there is no indication that Robinson had the all-clear to return to his regular work duties by the time of his termination in November 2023. Indeed, in contrast to the Doctor's Note from August 30, 2023, in which the medical provider wrote that "Patient Off work and may return on 8/31/2023 with the following restrictions" and states that the "Restrictions [are] in effect until 9/2/2023," (Aug. 30, 2023 Doctor's Note at 1, ECF No. 37-6), the September 5, 2023 Report includes no clear date lifting the restrictions, (Sep. 5, 2023 Medical Rep. Form at 6). Additionally, even assuming that the suggested follow-up date is a clear indication that the restrictions were supposed to last only for that time frame, Robinson's termination may have fallen within, or at least very close to, the six-to-eight-week window in which all the parties agree that Robinson had to be on light duty because the record is

8

unclear about the exact date that Robinson was even terminated. (See, e.g., Robinson Dep. 83:4–6 ("Q. Okay. So you tell me, in November 2023 what was the date that [the termination] occurred? A. The day I got fired. Q. Yeah. What day was it? I assume it was a memorable event. Can you tell me what date it was? A. I'm terrible with dates. I know it was November of '23. I want to say it was, like, the 11th. Q. Okay. And do you recall what -- A. No, no, no, no. I'm sorry. It was three days before Thanksgiving. It was, like, the 17th or, like, the 18th or whatever. What day does Thanksgiving fall? I'm terrible with dates. I'm terrible with dates. Q. Okay. If you don't know, Mr. Robinson, this is not hearsay. If you don't know -- A. I know round about. I know round about 'cause it was very, like, you said, traumatic. Q. Well, I said memorable, but that's all right. A. Memorable, yeah. Traumatic (inaudible).")). Construing the facts in the light most favorable to Robinson, he may have been terminated within or near the six-to-eight-week window at the time of his termination.

There are also disputes including but not limited to whether Delmarva was in receipt of the September 5, 2023 Medical Report Form and whether Delmarva terminated Robinson under the pretense of discrimination. That is, Robinson asserts that he tried to give King his September 5, 2023 Medical Report Form, but that King refused to accept it. (See Robinson Dep. 65:7–9; 90:5–10). King, for his part, insists that this never happened. (See King Dep. 35:8–36:18; 52:17–53:7 ("Q. Yeah, okay. Did Mr. Robinson give you this note? A. I don't recall getting this note, no. Q. Okay. Are you saying you didn't get it, or are you saying you don't recall one way or the other? A. I didn't get it. Q. You're saying you did not receive it? A. Correct. Q. Okay. So if Mr. Robinson says that you did receive

9

it, then you and he have a disagreement about some fairly important facts, right? A. Yes, sir.")). Additionally, with respect to the pretense of discrimination, Robinson testified that King called him a "sissy" and other names when Robinson told King that he needed to be on light duty, (see Robinson Dep. 68:2–69:6), which, again, King does not remember saying, (King Dep. 42:2–14; King Answers to Interrogs. at 6, ECF No. 37-9). The credibility of witnesses and weighing of evidence is for a jury to decide. Anderson, 477 U.S. at 255. For all these reasons, the Court finds that summary judgment is not appropriate on Robinson's claims of discrimination under the ADA.

### 3.    Reasonable Accommodations

The Court will next address Delmarva's Motion for Summary Judgment as to Robinson's reasonable accommodations claims. (Mot. at 24–25). Whether Delmarva provided reasonable accommodations to Robinson under the ADA is a closer call, but Robinson also raises a genuine dispute on this issue. To establish a prima facie case for failure to accommodate, a plaintiff must show: "(1) that he was an individual who had a disability . . . ; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n. 11 (4th Cir. 2001)). "Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." Haneke v. Mid-Atl. Cap. Mgmt., 131 F.App'x. 399, 400 (4th Cir. 2005) (citing 29 C.F.R. § 1630.2(o)(3)).

Here, as to the first element of whether Robinson "was an individual who had a disability within the meaning of the statute," for the same reasons as stated above, there are genuine disputes of fact that include but are not limited to whether Robinson indeed had a disability in November 2023. Additionally, there are genuine disputes concerning whether Robinson was on light duty at the time of his termination. (Compare King Dep. 36:5–11 ("Q. So when he was fired, was he on light duty at that time? A. No, sir."), with King. Dep. 45:18–46:7 ("Q. Do you see your answer to Interrogatory 12? A. Yes. Q. Okay. And about halfway down it says 'Mr. King was aware that plaintiff was on light duty.' So is that true, not true, accurate, not accurate? A. I knew he had been on light duty. But most everything you do over here is light duty.")). For all these reasons, summary judgment is not appropriate on Robinson's reasonable accommodation claims.

### 4.    Maryland Equal Pay for Equal Work Act

The Court will next address Delmarva's Motion for Summary Judgment as to Robinson's claims under the MEPA. (Mot. at 31–32). The MEPA provides, in relevant part, that an "employer may not . . . take any adverse employment action against an employee for: (i) inquiring about the employee's wages or another employee's wages; . . . [or] disclosing the employee's own wages." Md. Code Ann., Lab. & Empl. § 3-304.1(a)(3). The few Courts that have analyzed claims under this provision of the MEPA do so by looking to the MEPA's federal analogue, the Equal Pay Act ("EPA"). See, e.g., Raines v. Am. Fed'n of Tchrs.-Md. Pro. Emps. Council, AFL-CIO Loc. 6197, No. ADC-19-1266, 2019 WL 4467132, at *10 (D.Md. Sep. 18, 2019) (applying the Equal Pay Act to

11

resolve MEPA claim); <u>Long v. Get U Trucking, LLC</u>, No. GLS-23-2392, 2025 WL 1370666, at *11 (D.Md. May 12, 2025) (same).

Under the EPA, retaliation claims are subject to the same analysis as claims of retaliation brought under Title VII and Section 1981. <u>E.E.O.C. v. Nucletron Corp.</u>, 563 F.Supp.2d 592, 597 (D.Md. 2008). Thus, to establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. <u>Id.</u> at 600; <u>Barbour v. Garland</u>, 105 F.4th 579, 593 (4th Cir. 2024).

Here, Delmarva moves for summary judgment on this claim mainly because it contends that Robinson fails to establish a willful violation of the statute, fails to prove causation, and fails to prove damages. (Mot. at 24–26). Given the facts presented in this case, however, the Court is not prepared to hold that, as a matter of law, a jury could not plausibly find that King violated the MEPA by repeatedly telling Robinson not to discuss his wages. (<u>See, e.g.</u>, Jan. 11, 2023 Text Message at 13, ECF No. 30-8). Indeed, King admits to "telling Plaintiff that he should not worry about what other co-workers make and he should not discuss his salary." (King Answers to Interrogs. at 5). Further, the record shows that King messaged Robinson multiple times not to discuss his pay. (<u>See, e.g.</u>, Nov. 13, 2020 Text Message at 49 ("Number one, you guys shouldn't even be talking about money.")). In response, Delmarva describes this evidence as "isolated remarks" untethered from Robinson's ultimate termination. (Def.'s Reply Supp. Mot. Summ. J. at 12, ECF No. 43). While a jury may find that to be credible, the Court will decline Delmarva's invitation

to weigh the evidence. For these reasons, the Court will deny Delmarva's Motion as to Count VI.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion for Summary Judgment (ECF No. 30) in part and deny it in part. The Court will grant the Motions to Seal (ECF Nos. 35, 39). A separate Order follows.

Entered this 20th day of May, 2026.

_____/s/_____
George L. Russell, III
Chief United States District Judge

13